Thanks. Okay. Our last case today is Gibson v. Outokumpu. Is that how you pronounce it? Stainless Steel USA. Mr. Rosenthal? Yes, sir. If it pleases the Court, my name is Ian Rosenthal. I represent Bradley-Gibson. You might pull the mic up a little bit, Mr. Rosenthal, that might help us hear you. I'm not used to anyone thinking I'm too tall. I can answer your first question, which is however you're supposed to pronounce Outokumpu. Generally we go by O-T-K because otherwise people just keep mangling it. Okay. Mr. Rosenthal, I can't understand why this case went to a jury in the first place. Well, me neither. Let me tell you why I think that way. Yes, sir. It is in granite. In other words, the records are solid about how many hours Gibson worked and when he worked and how much was rounded off. That information, rounded off information about how he worked, goes to the contractor. Is that right? The contractor calculates the pay. It should. It did not. Okay, so the contractor adds it up and says here's how many hours he worked, here's how much he received, and here's his hourly rate. That's all fixed, is it not? It would be if they had ... I mean ... Wait, hold on. It would be if they ... It would be if the company had obtained and recorded that information week by week by week as the statute requires, and they did not. Instead, your point is a great one, which I've been saying for years. They're supposed to be, under 29 CFR 516.2, a regular rate recorded. They're supposed to know how much overtime they paid every week. They're supposed to know how much time was worked every week. In the Olson case, it was said the employer must, at a minimum, present records that will enable the court to make accurate calculations. What this company had was two-week records, which they admitted did not differentiate one week from another. Then in calculating how much overtime to pay for different categories of overtime, they lumped the time and the pay for the two different weeks together. Then, to compound all of those problems, a week's supposed to be 168 hours. Instead, they took time that went past Sunday 6 a.m. and Mr. Gibson was working, and they just pretended it was all in the same week as the week before. Your point is a great one. If they had all of their records, we would have counted it up. Maybe there would have been a question about what the week should be, but either way, the math would be the math. Yeah. See, the problem for me is that it did go to a jury, and you had the burden of proof, and I don't know that the jury was required to credit all the evidence that you put on. So, you know, you have Matzah's testimony, but on Cross, it's brought out that he didn't use any of your client's earnings statements or pay stubs to make his calculations. What if the jury just said, we're not convinced that his calculations are reliable? Let me respond to one factual statement you made, and then to the broader point. Okay. What Mr. Moroz used is the data which showed exactly the same numbers as the earnings statements. So it's not taking the PDFs of the earnings statements, it's taking the data equivalent of the same numbers for the same periods. But to your point, what if they disregarded his numbers? Well, they were charged, first of all, that with regards to rounding, every minute that he was clocked in and had made relief should be counted. They awarded him, counterintuitively, money for every minute that was rounded up until three years before the lawsuit was filed. Then they awarded him money for every minute within three years of the lawsuit being filed, as long as it was not in weeks in which 40 hours was worked, and awarded him zero for the works overtime, because in closing, that is what OTK's counsel urged them to do. They were also charged that the bonuses had to be counted back into regular rates and never were. You can't get to zero. They were, they admitted at trial with specific weeks and in this mess that we should have had an easy calculation, Judge Shoflat, of these are the numbers, this is what happened. Instead, their witnesses said, first, we can't tell you how much was paid for overtime in particular weeks, but when he works night shift weeks, when he works night shifts for a week, we're paying him $.38, $.39, $.40 an hour less than is required for overtime. They were charged on all of that because summary judgment on the liability aspects hadn't been done. I'm wondering how we really, you're saying the jury made a lot of determinations that are not apparent to me? What the jury's thinking was, the jury has a verdict form that asks, was Mr. Gibson paid less overtime than required by the Fair Labor Standards Act on his claim? Answer yes or no. And then the jury form says, we, the jury, award him the following amount for unpaid overtime, and a blank space follows. And they write in, and during pretrial discussion, OTK's counsel says, yeah, that's fine, so long as the jury can put zero there. There's no objection to that, and the jury does. What am I to make of that? Fair enough. First of all, you can argue for anything because argument is not evidence. Second of all, I would suggest to you that every single time a verdict is set aside, I'm sorry, I'm overstating it, lots of times that a verdict is set aside where a court makes an error is because somebody argued for something that was not supported by the evidence. And it does bring me back to a point you raised earlier. Their expert witness, and I would put expert in finger quotes, testified affirmatively. I'm sorry, maybe, and I apologize for interrupting you, but the response I was hoping to hear from the Chief's question is, why is it if there was any issue, the issue was with the wording of the verdict form, which perhaps was confusing, but in error, the court suggests you invited because you didn't object to the form. I think the verdict form was fine in that what you do in an FLSA case is you tally up the weeks in which there is an underpayment, and you put a dollar amount. My point here is what cannot be supported by the record is a zero dollar amount. That is not to limit the argument they made. Doesn't that depend, though, on the idea that you're crediting your witness' testimony? And their witness' testimony. What Dr. Johanson, whose name pops up, is that. Yeah, but they don't have a burden of proof. You do. And the jury here considers all the evidence that it was presented with, including her testimony on direct, that for overtime, just for the rounding, it was $2,000. That was her testimony on direct, and in closing argument, what OTK's counsel said was, take that amount and stick it in the common law quantum merit claim. Why were experts used in this case? All they did is add up what was already in the evidence, in the record, in other words. As we said to the district court, and I can't— Everything, all the pay was there, all of the hours worked were there. You apply the Fair Labor Standards Act. The only dispute was whether the work week, or the pay, whatever, was Sunday, 6 a.m. to 5.59 or the next day. That's all they had to decide, and they decided that. So once they decided that— Well, I do not disagree that if you were really good at math— What did the experts add? Great point. Mr. Moreau's, for the plaintiff, was not admitted as an expert. He was just providing calculations of math. Dr. Henry. The earnings statements don't tell you how the regular rate of pay was calculated, how the bonus was allocated, how much rounding on and off time he performed. So what Moreau is doing is supplying that. No. In violation of 516.2, the earnings statements show none of that on a weekly basis. What he is doing instead is taking 168-hour weeks, taking every minute and what time it was worked and putting it in those weeks, taking the rates that were actually paid for that time, creating a blended average for that week, taking the bonus amount that was never calculated into the regular rate, allocating it to the weeks in which it was earned. All of that is mathematical, a mathematical process, and then comparing it to what maybe they paid per week. It's all math. To your point, if that sounds complicated, imagine Bradley Gibson, or me, frankly, trying to do that over three years off data with three years of time stamps. All of that could have been stipulated, couldn't it? The entire works. It should have under the joint pretrial document, which requires reasonable stipulations. The judgment decides whether or not the rounding eliminated work. He already decided that. That was a fact issue. But the judge, inherently, that was a fact issue whether he was working when he checked in before the hour. That was explicitly decided in plaintiff's favor. But the court held, as a matter of law, and there's no dispute as I understand it, that he should have been paid during that period of time. Yes, sir. And there's no dispute about the lunch. He was paid during the lunch. Yes, sir, and should have been. He mostly was working during the lunch. That's why. So that's, and I never could figure out what this setoff was. The employer did not plead, as an affirmative defense, any kind of a setoff at all. They just, so you were trying three claims, as I understand it. One had to do with the work that was done that was rounded off. Another claim had to do with the lunch. And another claim had to do with the bonuses. Those were all resolved in plaintiff's favor on summary judgment, which is why we didn't try them to the jury. What was left to the jury is, what are we counting for a 168-hour week and how much money goes with that? Okay, Mr. Rosenthal, you've saved some time for rebuttal. Let's hear from Ms. Gatlin. Thank you, Your Honor. The plaintiff had the burden to prove damages and they failed to carry that burden. Well, they were successful in terms of the substantive claims. And as a matter, and we talked earlier about just basic common sense, how do you succeed on a claim that you weren't properly paid and then you don't have any damages reflecting that harm? Okay, this is why. And this will also answer Judge Joe Flatt's question about why wasn't this case decided on summary judgment. The plaintiff has two incredibly novel FLSA claims in this case. The first one was that the work week had to be run from midnight to midnight. It could not separate a day. So, the Otokampu work week runs from 6 a.m. on Sunday to the following. I say 6 a.m., but it's 5.59. So, that is how it runs. It intersects a day. So, if you start on work on Saturday at the end of the week, you're going to finish working on Sunday. And so, on the paychecks, it had the last day of the period would be Saturday. Plaintiff's counsel, very skillfully, took these paychecks and said, this is not a 168-hour work week because you're ending on Sunday. And he created, which good claims lawyers do, he created this scenario where our work week was uncertain. Despite the fact, as you saw in the record, that the handbook said that it would be 6 to 6. Despite that there were no witnesses that testified that the work week was different, everybody from the company testified that it had always been that. And so, the reason for the expert was because you had three weeks, three years of pay records, as you noted. And so, my thought is I can show the jury by the math that they were paying them from 6 to 6. Were the experts doing anything more than mathematics? Basically, if you squeeze everything down, were they doing anything more than mathematics? No, but she was doing math that I wouldn't be able to do. Because if you, if I want to show over three years that his pay lined up with that work week that we claimed, I would have a hard time doing that. So, she went through those and the pay records and saw that they lined up. And so, that's the reason that it had to be tried, because he had created a fact issue about when the company's work week was. And he had this theory that it had to be from midnight to midnight. There's some, there's some testimony from Ms. Pledger quoted, I think it's at Doc 177, where he's sort of hounding her at trial, like what day is today? When does tomorrow start? Confusing stuff like that, and it just didn't work. The jury, you know, it was a good jury. Mobile's sort of a industrial town now. There were people that work shifts like this. They fully understood that you could start work on one day and end on another, you know. So, that theory did not work for him. And the jury, as you saw on the verdict form, found that the work week that the company put forth. Well, tell me this, you started with something that I had mentioned earlier, which was that the jury could have discredited his evidence and determined that he failed in his burden of proof as to the amount. Yes. That it was anything more than zero. Yes. Why? Tell me how the jury could have done that. Well, Your Honor. I brought out the cross-examination about the earnings statements. Why would that have made a difference, for example, to the jury? Well, Your Honor. Or would it? The plaintiff's damage evidence was not credible.  How so? Mr. Meraz testified that he simply took numbers. He'd been provided by the plaintiff. He didn't have the actual pay records that he made his calculations from. Because they manipulated the work week, they did not count. You know, they had their 168. So your point is that because he changed what the work week was from what the company says, how the work week works, that's why he wouldn't rely on the earnings statements, because the earnings statements would be a reflection of what the company says the work week is. Correct. And they are in the record. And they are paid every two weeks. That's not unusual. But because he manipulated that work week, and oddly, you know, the work week the company was using was more generous on overtime because it matched their schedules. So the reason he had a 6 to 6 work week is because that's when his shift started. So under the company's work week, he was paid more overtime than he would have been if it was from 12 to 12. But what they did was because they said it has to be by this 168 hour work week that we say it is, and you can't carry it forward, they would discount the overtime that the company paid and said that you couldn't carry it forward week to week under the Freccia, your case, I'm probably not pronouncing it correctly. I think that's how you pronounce it. But so that is why there really, it really was, and you know, Ian knows that I say this, it really was a house of cards FLSA case. And it was a case that fell apart because it was based on this shifting of the work week. The other, he had another very novel and we strongly believe incorrect FLSA theory that is raised in our cross claim. And I invite you to take a look. We get to the cross claim, of course, if we agree with him, I think. So I just want to be clear, maybe, and I appreciate definitely the importance of the experts here in terms of the math. But just to break it down, if indeed the jury should have been calculating damages on this 168 work week, and even if the experts were not able to support whatever number Mr. Gibson was trying to propose, how does that get us to zero? I mean, is it that the jury therefore had no responsibility to do some math or? Well, I think the jury gave them exactly what, and he said, you know, they had this rounding claim, which is the only claim that the plaintiff himself testified. I didn't think my seven minutes should have been rounded off at the end. That's what I thought. And, you know, on cross examination, my partner asked him, was anything else wrong with your pay? And not that he knew of, he left that to his lawyers. But he did testify that he thought his minutes should not have been rounded off. And so in closing, I told him, because I thought he was a good witness, and I thought that he was believed on that. And I thought it actually showed what his real claim was. And so I did say, if you want to give him the rounded off minutes, that's the state law claim, give him that. But they said the same thing. I mean, they said the whole time that that was a state law claim. They said that in closing, they asked for the $3,800 that the jury put in there. So the jury gave them what the plaintiff himself asked for. What they discredited was the bonus claim and the workweek claim. And they discredited that because they saw that based on the company's workweek, they were paying him the overtime. And the overtime number that they came up with was from not giving credit for the bonus monies that had been paid and not giving credit for the overtime that had been paid using the company's workweek. And so the jury, it was a week-long trial. And Ms. Johansson was a good witness. We were able to go through those pay records and show them this was paid. This is not, you don't just take it off because you come up with another workweek and don't count the overtime the company already paid. And you come up with another bonus theory and you don't count the money that was paid on that. I want to say one thing quickly because I know Ian will come to this when he comes back up. He's saying we didn't have a solid 168-hour week. The other reason he asserted that is because the company, when somebody came in at, and this didn't apply to Mr. Gibson, but there's another part of the meal where the people worked seven to seven. So those guys, they would go over until seven on their last day. And so the company and the testimony was, and what they did, was they paid overtime until the shift ended. So they included that one hour. But there is guidance that allows them to do that. And it actually resulted in the employees being paid more overtime because they got the whole time. You know, the company's testimony is we didn't want them to come in, go into overtime, and then have the overtime cut off before they went home. So that is where they were coming up with that we didn't have the 168-hour workweek. And the reason I want to take a minute to talk about this bonus is because the Otacompo rule or the Hornaday rule is now being touted around and cited in this circuit as a rule that means that on a percentage bonus, the bonus must be paid. You agree that we don't get, as I read your brief, we don't get to any of that. I understand and I appreciate that. The only reason I read your brief and you said that we don't get to that issue. If we think the jury was entitled to discredit his damage calculation. Your Honor, I understand that. The only reason I bring it up is it could be, you know, an additional grounds for affirming is that the summary judgment should never have been given in the first place. If the court were to be inclined, because what is being cited now as the rule in this circuit is inconsistent with the Ninth Circuit. And it's inconsistent with Frexia. It's not something that our court has held. Well, because there was a prior case, the Hornaday case, which was a default judgment case. Long story, okay. Long story. This is rarely a good place for long stories. But that was affirmed after a default. And so now it's being said that if the bonus is calculated over a month, then it cannot be paid over the two-week pay period. That that's a mismatch. And then his argument, because I think this goes to your question of why wasn't this just summary judgment? And why didn't you just look at the pay subs? Because what he was saying is that because the bonus period was earned over a month, but it was paid on the earnings for the month. It was paid on the two-week, every two-week check. Those were the earnings for the month. All right. His theory, which the district court below gave him summary judgment on, is that it had to be paid on the days worked. Because the reason a percentage bonus is the same as recalculating is you get the same number. Okay, so that was his bonus claim that the jury rejected. But because it has, you know, because there's this summary judgment holding out there, it is inconsistent with Frexia, which says that the commissions can be calculated over the weeks within the commission period, which is the same thing Otacompo was doing. They were calculating the bonus over the weeks that were included in the period. And it's inconsistent with the Ninth Circuit's decision in Russell which says that a one-year bonus is acceptable. You know people don't get paid one time a year, so it's calculated over their earnings. And the Russell case uses the word earnings. So I'm just calling to your attention that this case, this decision on this summary judgment, is being cited to say that you cannot calculate bonuses, commissions over the weeks in the period. It has to be calculated by the month. And I think that's wrong. And I think it's trouble for a lot of employers in this circuit. Your Honor, I will conclude back to the original point of this appeal by quoting Judge Albritton from the Middle District of Alabama, and a case that's at the record at 177. And he said, the plaintiff should not be allowed to request the very verdict form which was used, wait for the jury to return a verdict, allow the jury to be discharged, and then contend for the first time that the verdict was inconsistent. This would amount to inviting error, speculating on the jury verdict, and then asking for a new trial after the jury had been discharged and it became too late to do anything. And I think that really sums up this case. And Your Honor, as to your question on the FLSA, there are cases cited in our brief, a couple of them, that say a finding of liability in an FLSA case does not require damages. The ruling of zero damages can reflect that the jury found that they did not carry their burden. Okay. Thank you. Thank you. Mr. Reza, I thought you saved four minutes. Yes, sir. And I think I will spend about 30 seconds on the bonus issue. Would you mind pushing the mic up a little bit? Yeah. Like I said, I'm not used to being too tall. I'll spend about 30 seconds on the bonus issue. The Judge Bieber's tax order sets out how every single case, every opinion letter that deals with this issue, says that there has to be a match between the period in which the bonus is earned and the period of earnings, which is exactly, in the commission context, the problem with FLSA, where commissions over a year were divided by 52 weeks, and I do not have to read back to you what you wrote. That's true of every single bonus case because it's consistent with the statute. The second thing I would like to talk about is what Ms. Gatlin glossed over. The reason we were trying this case is because OTK created for itself two different fact issues. Its 30B6 representative in the Parnity case swore and verified that its work week was Monday to Sunday until she changed it to Sunday to Saturday. We sought summary judgment, arguing that that should be binding. Instead, they said, no, it's Sunday 6 a.m. to Sunday 5.59 a.m. That was the only reason that we had to try that issue, and it allowed the jury to weigh its representative's sworn testimony at trial against her credibility in her sworn binding testimony at deposition. But you know, appealing a denial of summary judgment is a steep uphill road, so we can't. The week that was left that we also cannot appeal is the fact decision by the jury that the week is Sunday 6 a.m. to Sunday 5.59 a.m. If that had been either decided or undisputed beforehand, there were only two numbers that were provided. There was Mr. Moroz's calculations, conservative, reasonable estimates that came to $8,448 if you tallied up every week of underpayments based on cutting off the time at 6 a.m. so that the rounded time didn't end up in a different week, factoring in the bonuses and factoring in that they were underpaying overtime rates. And then, just before trial, at the Daubert hearing, that was already held on a motion that had been filed seven or eight months earlier, Dr. Amidon announced that she had calculated on that same Sunday 6 a.m. to Sunday 5.59 a.m. basis a $12,000-odd figure. Using the same approach, she said applying Judge Biberstock's summary judgment rulings, factoring in the bonuses, cutting the time at 6 a.m., and not crediting payments from one week against another, which you can't do anyway. So those were the two numbers. Oddly enough, their number was higher. We offered to stipulate to that. The joint pretrial document requires reasonable stipulations. OTK refused. You can't make a party stipulate. And then, at trial, over and over again, and we have cited the pages in our brief, because they were allowed to, under the motion and limited rulings, where they could talk about cross-payments, aggregate numbers, anything. Okay, you're about to lose time. I'm not sure how much patience you're going to enjoy. Sure. So how do we get to, I guess, you know, the verdict form being okay and not objected to? Because I think, again, just speaking for myself, I could see how there could be some confusion as to what the jury actually calculated or discounted. But how do we know that from the verdict form? And if it's not relevant, why can't we just go on the zero number they calculated? They were asked to decide what week applied. They did. They were asked to decide what amount went with it. They said zero. And that is a number that cannot be reconciled with anything they heard unless you start subtracting for other theoretical weeks, which they can't do, and which they should never have heard about, because our motions and limited address that very point that they can't be talking about. This is what we might have paid over a year, two years, three years. That's never supposed to be heard, just like infection. Okay, Ms. Rosenthal, we understand your case. We're going to be adjourned, recessed until tomorrow. Thank you all for your time.